MATTER OF M/V "TUNG AN"

In Fine Proceedings

BAL-10/1.254

*Decided by Board June 28, 1966*

(1) Where, following immigration inspection, the master of the vessel lifted the seaman papers of the 37 crew members denied conditional landing privileges, two professional guards were placed on duty on an around-the-clock basis, the Service was promptly notified when 3 crewmen escaped and the master and his officers were very cooperative with the Service, the $1,000 fine imposed as to each crewman under section 254(a)(2), Immigration and Nationality Act, is mitigated to the extent of $500 per crewman; however, further mitigation is unwarranted as the crewmen refused landing permits were not confined to quarters, they were not periodically checked by the ship's officers, there does not appear to have been any earnest effort by responsible parties to locate and/or apprehend the escapees nor have they furnished any information leading to apprehension of the escapees, who, still at liberty in this country, have not been promptly removed by and at the expense of the responsible parties.

(2) In determining the extent of mitigation, it is incumbent upon the parties responsible for the vessel's operation to affirmatively establish the existence of reasons for the relief of mitigation.

IN RE: M/V "TUNG AN" which arrived at the port of Baltimore, Md., from foreign, on February 26, 1966. Alien crewmen involved: Lee Tim, Lee Chi Wai, and Ip Shui Chung.

BASIS FOR FINE: Act of 1952—Section 254(a)(2) [8 U.S.C. 1284].

The Acting District Director at Baltimore has held that the vessel's Master, Eryl Hughes, and/or its agents, Rukert Marine Corporation, have incurred liability to administrative penalties of $3000, $1000 as to each of the alien crewmen named above, for failure to detain them aboard the vessel at all times despite the fact that they had not been granted conditional landing privileges. However, said official found present herein factors which, in his opinion, merited mitigation of the fines to the extent of $900, $300 per crewman. Thus, he permitted to stand a total penalty of $2100, $700 per crewman. The appeal from his decision, which

brings the case before this Board for consideration, seeks maximum mitigation of the fines, to wit: down to $200 per crewman, for a total penalty of $600.

It appears from the record before us that the following material facts exist without substantial controversy. Immigration inspection, which was accorded the crew of this vessel immediately upon its arrival from foreign (ante), resulted in the denial of conditional landing privileges to 37 alien members of the crew, including the three named above. Accordingly, Forms I-95A "Refused" were executed as to them and copies thereof handed the Master. Thereafter, and specifically on March 9, 1966, these three crewmen disembarked from the ship and have not been located to date.

The foregoing establishes that liability to these fines has been incurred, and this is uncontested. The statute makes no provision for remission of the fines, so that they cannot be forgiven in full. Thus, the only issue presented for our consideration is whether more mitigation than has already been authorized by the Acting District Director is warranted in these premises and, if so, to what extent.

Two professional guards per shift were on duty on an around-the-clock basis at all times while the vessel was in the port of Baltimore, with one guard being stationed at the gangway and the other on the pier. The seaman's papers of the crew members who had been refused conditional landing privileges were lifted by the Master and retained in his possession at all times until turned over to the immigration officer who investigated the escape of these three crew members. The Master notified the Service of their escape approximately one hour after it was brought to his attention. The Acting District Director's opinion reflects that the Master and his officers aboard the ship were quite cooperative with the investigating Service officers.

The Acting District Director was of the opinion that the foregoing factors merited mitigation of the fines to the extent of $300 per crewman. It is our opinion that they call for $200 additional mitigation per crewman, which means that we will permit to stand a fine of $500 per crewman, for a total penalty of $1500. We cannot, however, agree with the appellant that reduction of the fines to a point below that figure is warranted here, for the reasons hereinafter discussed.

It is neither asserted nor demonstrated that the members of the crew of this ship who were refused conditional landing privileges were confined to their quarters. It is neither claimed nor demonstrated that the ship's officers were assigned the duty of constantly checking to see to the continued presence of the detainees on board,

or that they did so. The parties responsible for this vessel's operation have furnished no information which might lead to the apprehension of the escapees. It does not appear that earnest and continuing efforts were exerted by the parties responsible for the vessel's operation to the end that the escapees would be located and/or apprehended. Since the record indicates that they are still at large in the United States, it is readily apparent that they have not been removed from this country promptly by and at the expense of the parties responsible for the vessel's operation. Under these conditions, reduction of the fines to an extent over and above that hereinbefore indicated just is not warranted.

We note the claim by the agents that the professional guards it employed to watch over these detainees were guilty of negligent performance of their duty on various occasions. This, however, is no basis for further reduction of the fines against the agents who are clearly responsible for the actions of the parties on whom they relied to meet the absolute statutory duty of detention existing in this case. In addition, the record clearly reflects that the deficiencies on the part of the guards were called to the attention of their superiors and corrected well before the time herein involved.

We also note that the agents have claimed that clear guidelines should be laid down for the benefit of all agents and other parties responsible for the operation of vessels with alien crews arriving in United States ports so that detention orders of the Immigration and Naturalization Service as to crewmen may be properly implemented. Suffice it to say, in this connection, that such guidelines have long since been laid down by this Board (*Matter of M/V "Clydefield*," 10 I. & N. Dec. 165), and our experience shows that shipping circles at various ports throughout the country are thoroughly familiar with them. The only further comment required on this point is that, obviously, those guidelines are, as they must be, general in nature and have to be viewed in the light of the factual circumstances presented by each individual case in arriving at a proper evaluation of the mitigation to be authorized in any particular instance.

We further note that the agents have indicated that the Acting District Director's decision is unfair in that it fails to state clearly the reasons why he did not authorize maximum mitigation of these fines. This complaint overlooks the fact that it is incumbent upon the parties responsible for the vessel's operation to affirmatively establish the existence of reasons for the relief of mitigation. It cannot meet this duty in a negative manner.

Finally, it is of no assistance to this appellant that five additional professional guards were hired after these three crewmen escaped. Clearly, this action on their part had no bearing whatsoever upon the matter now under consideration. Again, in this connection, the number of professional guards hired and the mitigation awarded on the basis thereof depends on the facts and circumstances peculiar to each case, and the other precautionary measures taken in conjunction therewith by the parties responsible for the vessel's operation. Here, only two professional guards were on duty over a considerable period of time to watch over 37 detained alien crewmen. Those crewmen were not confined to quarters, they were not periodically checked by the ship's officers and it has not been shown that the layout of the pier at which the vessel was berthed was of such a nature as to be of assistance to the two professional guards on duty in keeping the crewmen confined aboard the vessel. Under these circumstances, mitigation of the fines to the extent of $500 per crewman is all that is warranted.

ORDER: It is ordered that the Acting District Director's decision of May 10, 1966, be amended to provide for mitigation of the fines to the extent of $1500, $500 per crewman, and that as so amended the decision of said officials be and the same is hereby affirmed. The penalty permitted to stand is $1500, $500 per crewman.